NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3036-16T1

STATE OF NEW JERSEY,

 Plaintiff-Appellant,

v.

ROBERT HERD,

 Defendant-Respondent.

 Argued November 8, 2017 – Decided November 27, 2017

 Before Judges Carroll and Leone.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Indictment No.
 16-06-1041.

 David M. Liston, Assistant Prosecutor, argued
 the cause for appellant (Andrew C. Carey,
 Middlesex County Prosecutor, attorney; Mr.
 Liston, of counsel and on the brief).

 Rebecca Gindi, Assistant Deputy Public
 Defender, argued the cause for respondent
 (Joseph E. Krakora, Public Defender, attorney;
 Ms. Gindi, of counsel and on the brief).

PER CURIAM

 The State appeals from an order admitting defendant Robert

Herd into the Pretrial Intervention Program (PTI) over the
prosecutor's objection. The State contends the motion judge

substituted his judgment for that of the prosecutor, and the

prosecutor's decision to reject defendant's PTI application was

based on a thorough consideration of all appropriate factors and

did not constitute a gross and patent abuse of discretion. We

agree with the State and reverse.

 I.

 The following facts are set forth in the PTI recommendation

report submitted by the Criminal Division Manager serving as PTI

Director. On January 19, 2016, an undercover investigator with

the Middlesex County Prosecutor's Office (MCPO) Task Force

completed a controlled purchase of .99 grams of marijuana from

defendant for $20. The transaction took place within 1000 feet

of Mill Lake Elementary School and within 500 feet of the Monroe

Community Center. On January 27, 2016, an undercover MCPO officer

completed a second controlled purchase of 7.06 grams of marijuana

from defendant for $110.

 These drug transactions resulted in defendant's arrest on

March 29, 2016. Following his arrest, police observed defendant

chewing on a green vegetation they believed to be marijuana. The

police asked defendant how much marijuana he ate, to which he

responded he "didn't eat shit."

 2 A-3036-16T1
 Defendant was subsequently charged in Middlesex County

Indictment No. 16-06-1041 with two counts of fourth-degree

distribution of marijuana, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A.

2C:35-5(b)(12) (counts one and four); third-degree distribution

of marijuana on or near school property, N.J.S.A. 2C:35-7 (count

two); third-degree distribution of marijuana within 500 feet of

public property, N.J.S.A. 2C:35-7.1 (count three); and fourth-

degree evidence tampering, N.J.S.A. 2C:28-6(1).

 Defendant applied for admission into PTI after he was

indicted. The Criminal Division Manager, as the PTI Director,

recommended defendant's admission into PTI. According to the

recommendation report, defendant was then an unmarried twenty-two

year old high school graduate who had attended one semester of

college. He was currently unemployed but actively seeking

employment. He reported smoking marijuana daily when he was

younger, but recently smoked only occasionally. Documentation

showed defendant participated in counselling programs in 2015 and

2016 for treatment of alcohol use disorder and cannabis use

disorder.

 The report stated defendant had a record of two juvenile

offenses in 2007 that were dismissed. As an adult, defendant had

municipal court convictions for criminal trespass and wandering,

 3 A-3036-16T1
a local ordinance violation, and a traffic violation for underage

drinking.

 The report recommended defendant's admission into PTI,

conditioned upon a substance abuse evaluation, compliance with all

treatment recommendations, and random urine monitoring. The

report also recommended defendant be required to continue his

education or procure and maintain employment, and remain offense

free.

 At a January 9, 2017 status conference, the prosecutor advised

the court he was still considering defendant's application. He

elaborated: "[M]y instinct is to reject [defendant] for PTI. I

don't believe he's an appropriate candidate for supervision." The

prosecutor proposed that defendant submit to a urine test, which

defendant declined on the advice of counsel. The prosecutor stated

defendant's decision to refuse the test was "neither here nor

there," and would "not weigh[] either way" in his decision to

approve or deny defendant's application.

 On January 15, 2017, the prosecutor issued a lengthy letter

rejecting defendant's application, thereby overriding the

Director's recommendation. The prosecutor explained he considered

"all information about [defendant] that is positive and

favorable," and each of the seventeen criteria identified in

 4 A-3036-16T1
N.J.S.A. 2C:43-12(e). We quote from the rejection letter at

length:

 Subsections 1 and 2. The Nature of the Offense
 and Facts of the Case. During . . . January
 [] 2016, defendant engaged in the distribution
 of marijuana in Monroe Township.
 Specifically, on two separate occasions
 defendant sold a quantity of marijuana to an
 undercover officer. The first sale was also
 within 1000 feet of the Mill Lake Elementary
 School and within 500 feet of the Monroe
 Community Center. On March 29, 2016,
 defendant was arrested by officers from the
 Monroe Township Police Department in
 connection with charges relating to the prior
 drug sales. After he was placed under arrest,
 the officers observed defendant chewing on
 something and he had what appeared to be
 marijuana stuck to his lips and teeth.

 Subsection 3. The Motivation and Age of the
 Defendant. Defendant is [twenty-two] years
 old and has indicated in the PTI Report that
 he would be a good candidate for PTI because
 it is the first time he is really in trouble,
 he wants to get his life back on track, he is
 trying to work and wants to go back to school.
 He further indicated that PTI would provide
 structure and would still allow him to get a
 job. Finally, he stated that he made a mistake
 and is trying to do the right thing.

 Subsection 4. The desire of the complainant
 or victim to forgo prosecution. This factor
 is not applicable in the instant case.

 Subsection 5. The Existence of Personal
 Problems and Character Traits Which May be
 Related to the Applicant's Crime and For Which
 Services are Unavailable Within the Criminal
 Justice System, or Which may be Provided More
 Effectively Through Supervisory Treatment and
 the Probability that the Causes of Criminal

 5 A-3036-16T1
Behavior can be Controlled by Proper Treatment
and Subsection 6. The Likelihood that the
Applicant's Crime is Related to a Condition
or Situation That Would be Conducive to Change
Through his Participation in Supervisory
Treatment. There are no "personal problems"
or "character traits" which are unique to this
defendant for which services would only be
available outside the criminal justice system.
Further, since the defendant has never been
subject to supervisory treatment there is no
way to tell whether he would be conducive to
change if given the opportunity.

Subsection 7. The Needs and Interest of the
Victim and Society. While there is no
specific victim of defendant's crimes, our
communities as a whole suffer as a result of
the actions of those who distribute drugs.
Society has a strong interest in deterring
individuals from such conduct. There is a
need for both specific and general deterrence
in this case.

Subsection 8. The Extent to Which the
Applicant's Crime Constitutes Part of a
Continuing Pattern of Antisocial Behavior and
Subsection 9. The Applicant's Record of
Criminal and Penal Violations and the Extent
to Which He May Present a Substantial Danger
to Others. Although[] the defendant has no
prior indictable record, the instant offense
appears to be part of a pattern of antisocial
behavior. Defendant repeatedly engaged in
criminal activity in January and March[,]
2016. Furthermore, his two prior municipal
convictions along with the instant arrest
failed to deter his criminal activity, as he
admitted to smoking marijuana until August []
2016, approximately five months after his
arrest[.]

 6 A-3036-16T1
Subsection 10. Whether or Not the Crime is
of an Assaultive or Violent Nature, Whether
in the Criminal Act Itself or the Possible
Injurious Consequences of Such Behavior. This
factor is not applicable in the instant case.

Subsection 11. Consideration of Whether or
Not Prosecution Would Exacerbate the Social
Problem that led to the Applicant's Criminal
Act. This factor is not applicable in the
instant case.

Subsection 12. The History of the Use of
Physical Violence Toward Others. The
defendant has no history of the use of
physical violence toward others.

Subsection 13. An Involvement With Organized
Crime. This factor is not applicable in the
instant case.

Subsection 14. Whether or Not the Crime is
of Such a Nature that the Value of Supervisory
Treatment Would be Outweighed by the Public
Need for Prosecution and Subsection 17.
Whether or Not the Harm Done to Society by
Abandoning Criminal Prosecution Would
Outweigh the Benefits to Society From
Channeling an Offender Into a Supervisory
Treatment Program. Channeling this particular
offender into the PTI program would harm
society by sending a message which would
minimize and trivialize the severity of
defendant's actions. Any benefit to the
defendant from acceptance into the PTI program
would be far outweighed by the harmful message
sent to society that such offenses merit a
diversionary program.

 7 A-3036-16T1
 Subsection 15. Whether or Not the Applicant's
 Involvement With Other People in the Crime
 Charged or in Other Crime is Such That the
 Interest of the State Would Best be Served by
 Processing the Case Through Traditional
 Criminal Justice System Procedures. This
 factor is not applicable in the instant case.

 Subsection 16. Whether or Not the Applicant's
 Participation in Pretrial Intervention Will
 Adversely Affect the Prosecution of
 Codefendants. This factor is not applicable
 in the instant case.

 These factors taken as a whole, and especially
 subsections N.J.S.A. 2C:43-12(e)1, 2, 7, 8,
 14, and 17, strongly weigh against the
 defendant's enrollment in PTI. While the
 defendant has no prior indictable record, his
 actions constituted a continuing pattern of
 antisocial activity and the seriousness of the
 offense and the public need for prosecution
 outweigh the positive factors that have been
 presented. See State v. Kraft, 265 N.J.
 Super. 106, 116-17 (App. Div. 1993).
 Therefore, the State must reject [defendant]
 from PTI.

 Defendant appealed the denial of his PTI application. In a

written decision, the judge found, with respect to factors one and

two, that the quantity of the drugs involved was small and "the

buys were solicited by the State and the State controlled the

meeting place." As to factor three, the judge found defendant

appeared remorseful and his desire to turn his life around "would

be impeded if any one of these charges were to show on his record."

 The judge expressed "concern" over the State's weighing of

factors five, eight and nine. The judge instead found it was not

 8 A-3036-16T1
a negative factor that defendant had not previously been subject

to supervisory treatment, and defendant's two drug sales, evidence

tampering, and three municipal convictions did not constitute a

pattern of criminal behavior. The judge reasoned that defendant's

attempt to swallow marijuana at the time of his arrest was

"demonstrative of his addiction" and his "prior record only

establishes the continued control [his] addiction has on him."

 The judge found "[t]he State was correct to argue under

[f]actor [seven] . . . that society has a strong interest in

deterring individuals from such conduct[,]" but also "society has

a strong interest in rehabilitating addiction." Disagreeing with

the State that factor eleven did not apply, the judge "[found]

that not only does it apply, but PTI supervision would enhance

[d]efendant's motivation for rehabilitation and completion of the

program." In a similar vein, the judge also determined that

factors fourteen and seventeen weighed in defendant's favor. The

judge explained:

 While there is a need to demonstrate that the
 State takes prosecution of all offenses
 seriously, that does not require prosecution
 of every defendant when there is an option to
 divert a defendant into a supervisory
 treatment program when that defendant has a
 need, like addiction. There is a public
 interest and need in the rehabilitative aspect
 of PTI. Not only does PTI offer
 rehabilitation, but it offers an incentive to
 be successful in that rehabilitation.

 9 A-3036-16T1
 Ultimately, the judge viewed the State's position as

"unsustainable as it was reflexive in nature, [and] premised upon

a failure to give due and proper weight to all the factors to be

assessed . . . [and] in several instances to conduct the requisite

individualized assessment necessary[.]" Based on these findings,

the judge concluded "[t]here exists clear and convincing evidence

that the State abused its discretion in denying [d]efendant

admission into PTI." This appeal followed.

 II.

 "PTI is a 'diversionary program through which certain

offenders are able to avoid criminal prosecution by receiving

early rehabilitative services expected to deter future criminal

behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting

State v. Nwobu, 139 N.J. 236, 240 (1995)). Accordingly, "a PTI

determination requires that the prosecutor make an individualized

assessment of the defendant considering his or her 'amenability

to correction' and potential 'responsiveness to rehabilitation.'"

Id. at 621-22 (quoting State v. Watkins, 193 N.J. 507, 520 (2008)).

 The scope of judicial review of the prosecutor's rejection

of PTI is "severely limited." State v. Negran, 178 N.J. 73, 82

(2003). Deciding whether to permit diversion to PTI "is a

quintessentially prosecutorial function." State v. Wallace, 146

 10 A-3036-16T1
N.J. 576, 582 (1996). "Prosecutorial discretion in this context

is critical for two reasons. First, because it is the fundamental

responsibility of the prosecutor to decide whom to prosecute, and

second, because it is a primary purpose of PTI to augment, not

diminish, a prosecutor's options." Nwobu, supra, 139 N.J. at 246

(quoting Kraft, supra, 265 N.J. Super. at 111-12). Accordingly,

courts give prosecutors "broad discretion" in determining whether

to divert a defendant into PTI. State v. K.S., 220 N.J. 190, 199

(2015). Thus, courts must "accord[] enhanced deference to a

prosecutor's decision in respect of a PTI application." State v.

Brooks, 175 N.J. 215, 225 (2002).

 The PTI statute requires prosecutors to consider a non-

exclusive list of seventeen criteria. N.J.S.A. 2C:43-12(e). These

criteria "include 'the details of the case, defendant's motives,

age, past criminal record, standing in the community, and

employment performance[.]'" Roseman, supra, 221 N.J. at 621

(quoting Watkins, supra, 193 N.J. at 520).

 "In order to overturn a prosecutor's rejection, a defendant

must 'clearly and convincingly establish that the prosecutor's

decision constitutes a patent and gross abuse of discretion.'"

Watkins, supra, 193 N.J. at 520 (citation omitted). "A patent and

gross abuse of discretion is defined as a decision that 'has gone

so wide of the mark sought to be accomplished by PTI that

 11 A-3036-16T1
fundamental fairness and justice require judicial intervention.'"

Ibid. (citation omitted). An abuse of discretion is manifested

where it can be proven "that the [PTI] denial '(a) was not premised

upon a consideration of all relevant factors, (b) was based upon

a consideration of irrelevant or inappropriate factors, or (c)

amounted to a clear error in judgment[.]'" State v. Lee, 437 N.J.

Super. 555, 563 (2014) (quoting State v. Bender, 80 N.J. 84, 93

(1979)), certif. denied, 222 N.J. 18 (2015).

 Even if a "'defendant can show that a prosecutorial veto (a)

was not premised upon a consideration of all relevant factors, (b)

was based upon a consideration of irrelevant or inappropriate

factors, or (c) amounted to a clear error in judgment,'" that

constitutes only "'an abuse of discretion.'" Wallace, supra, 146

N.J. at 583. "A 'patent and gross abuse of discretion' is more

than just an abuse of discretion as traditionally

conceived[.]" Id. at 582-83. "'In order for such an abuse of

discretion to rise to the level of "patent and gross," it must

further be shown that the prosecutorial error complained of will

clearly subvert the goals underlying Pretrial Intervention.'" Id.

at 583 (citation omitted). "We must apply the same standard as

the trial court," and review the "judge's reversal of the

prosecutor's decision de novo." State v. Waters, 439 N.J. Super.

215, 226 (App. Div. 2015).

 12 A-3036-16T1
 Guided by these standards, we conclude the judge erred in

ordering defendant's admission into PTI over the prosecutor's

objection. We are convinced from our review of the record that

the prosecutor considered, weighed, and balanced all of the

requisite factors, including those personal to defendant as well

as the facts and circumstances of the offense.

 The prosecutor not only gave significant emphasis to the

circumstances of the offense, but also considered defendant's

individual characteristics. The prosecutor considered mitigating

factors personal to defendant, such as his age, background and

motivation to complete the PTI program and turn his life around.

 The prosecutor did not consider inappropriate factors.

Contrary to defendant's argument, the prosecutor stated he would

not weigh defendant's refusal to submit to a urine test against

him, and that refusal played no role in the prosecutor's ultimate

analysis.

 The judge erred by interjecting himself into the process of

weighing the applicable PTI factors, and predicated his decision

upon his own assessment of those factors. Contrary to the judge's

determination, the prosecutor's assessment of factors eight and

nine was not inaccurate. Rather, the prosecutor's position that

defendant's two drug sales, tampering with evidence, subsequent

marijuana use, and prior municipal convictions, established a

 13 A-3036-16T1
pattern of antisocial behavior, finds clear support in the record.

The judge also misread factor eleven to refer to rehabilitation

when by its terms that factor focuses on whether "prosecution

would exacerbate the social problem which caused defendant's

criminal act."

 Here, defendant was charged with a number of offenses spanning

three different dates, including distributing marijuana in a

school zone. As the State points out, "[t]he school zone statute

creates the presumption against PTI[.]" State v. Caliguiri, 158

N.J. 28, 43 (1999).1 Defendant responds that New Jersey's drug

laws have undergone substantial changes since 1999, thus rendering

the holding in Caliguiri inapplicable to the present case.2 We

need not decide the issue, since in any event the judge improperly

discounted defendant's drug sales and their location because they

were controlled purchases. Even if the undercover officer(s) made

the purchases and chose the location, defendant was willing to

sell the drugs at that location. In his brief to the trial court,

1
 The State did not present this argument to the trial court and
consequently the judge did not rule on the issue.
2
 Defendant also argues that "marijuana's classification as a
Schedule I substance, pursuant to N.J.S.A. 24:21-5, can no longer
be maintained in light of the adoption of the New Jersey
Compassionate Use Medical Marijuana Act," N.J.S.A. 24:6I-1 to -
16. However, the Medical Marijuana Act has not yet resulted in a
change in the classification of marijuana, and in any event the
court did not cite it as a basis for its decision.

 14 A-3036-16T1
defendant conceded that factor seven, "[t]he needs and interests

of society," bore "considerable weight against [him]." Moreover,

the judge relied on the importance of addressing defendant's

addiction, but defendant never contended he was addicted, or that

addiction caused him to make the sales or swallow the marijuana.

 While reasonable minds could differ in analyzing and

balancing the applicable factors in this case, judicial

disagreement with a prosecutor's reasons for rejection does not

equate to a clear error of judgment or an abuse of discretion by

the prosecutor. State v. DeMarco, 107 N.J. 562, 566-67 (1987).

In this instance, the judge improperly substituted his own

discretion for that of the prosecutor. Also, defendant did not

show and the judge did not find that the prosecutor's decision

would clearly subvert the goals underlying PTI. Thus, the

prosecutor's rejection of defendant's PTI application was not a

patent and gross abuse of discretion. We are therefore constrained

to reverse and remand for further proceedings on the indictment.

 Reversed and remanded.

 15 A-3036-16T1