**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4588-18
                    A-4638-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ILENA Y. SILVA,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ROWJEAN V. RODRIGUEZ,

      Defendant-Appellant.

_____

Submitted March 15, 2021 – Decided April 20, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-11-2461.

Joseph E. Krakora, Public Defender, attorney for appellant Ilena Y. Silva (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Rowjean V. Rodriguez (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent State of New Jersey (Debra R. Albuquerque, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

On November 29, 2017, defendants Ilena Silva, Rowjean Rodriguez, and two others were charged in an Atlantic County indictment with second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2(a)(1) and 2C:12-1(b)(1) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7) (count three). The charges stemmed from an August 10, 2017 melee in a grocery store during which defendants and other members of their family assaulted a woman.

A-4588-18

On January 3, 2019, after their respective Pre-trial Intervention Program (PTI) applications had been rejected,[1] defendants entered negotiated guilty pleas to count three in exchange for the State's dismissal of the remaining charges and agreement to reconsider defendants' PTI applications. If the State maintained its rejection and defendants' respective motions to compel admission were denied by the trial court, then the State would recommend non-custodial probationary dispositions. Following reconsideration, the prosecutor rejected defendant Silva's and Rodriguez's PTI applications in letters dated February 24 and 27, 2019, and the court denied their motions to compel admission on March 19 and May 23, 2019, respectively. Thereafter, both defendants received one-year suspended sentences, which were

---

[1] "PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). "[A]cceptance into PTI is dependent upon an initial recommendation by the Criminal Division Manager and consent of the prosecutor." Ibid. In the past, "[t]he assessment of a defendant's suitability for PTI [was] conducted under the Guidelines for PTI provided in Rule 3:28, along with consideration of factors listed in N.J.S.A. 2C:43-12(e)." Ibid. However, effective July 1, 2018, "Rule 3:28, the PTI Guidelines, and the Official Comments . . . were repealed and replaced." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 473 n.4 (2018). "The new rules, R. 3:28-1 to -10, 'are designed to realign the PTI program to its original purpose to divert from prosecution first time offenders who would benefit from its rehabilitative components.'" Ibid. (quoting Notice to the Bar: Proposed New Court Rules 3:28-1 through 3:28-10 (Pretrial Intervention), 6 (Aug. 16, 2017)).

A-4588-18

memorialized in judgments of conviction entered on May 28, 2019, from which each now appeals.

The appeals were calendared back-to-back and, because they share common facts and legal issues, we now consolidate them for the purpose of issuing a single opinion. In her appeal, defendant Silva raises the following single point for our consideration:

> DEFENDANT SHOULD BE ADMITTED INTO PTI OVER THE STATE'S OBJECTION BECAUSE THE DENIAL OF PTI WAS A PATENT AND GROSS ABUSE OF DISCRETION.

In her appeal, defendant Rodriguez raises the following single point for our consideration:

> BECAUSE THE STATE HEAVILY RELIED UPON A PRESUMPTION AGAINST ADMISSION THAT NO LONGER EXISTS, A REMAND FOR RECONSIDERATION OF [DEFENDANT'S] PTI APPLICATION IS REQUIRED.

For the reasons that follow, we affirm.

## I.

We glean these facts from the PTI record. On August 10, 2017, Hammonton police officers responded to a grocery store on a report of a fight. The victim reported to the officers that she was physically assaulted by four individuals, defendants Ilena Silva and Rowjean Rodriguez and codefendants

Gloria Silva and Belita Rodriguez, their respective mothers. The victim stated she did not know the suspects but had been the target of Gloria's racial comments in the past. Although the victim had scratches and bruises to her body, arms, hands, face, and head, she refused medical treatment.

One of the responding officers watched the surveillance footage from the grocery store which showed the victim and Gloria exchange words at an intersection adjacent to the store. After the exchange, the victim entered the store and called 911 before crouching in an aisle to hide. Defendants arrived in a minivan shortly after the verbal exchange and entered the store with Gloria. The three suspects cornered the victim in the aisle and, after an additional exchange, began striking the victim in her body, face, and head area with closed fists. While returning defensive blows, the victim attempted to flee the store but her path was blocked by Rowjean, thereby allowing the attack to continue. Ilena also bludgeoned the victim with an unknown object she had grabbed from the floor. Moments later, codefendant Belita Rodriguez entered the store and joined the attack on the victim. Before the responding officers arrived at the scene, defendants exited the store but were later detained.

A-4588-18

Upon reconsideration of defendants' respective PTI applications as well as their "compelling circumstances letter[s]," and after "reviewing all appropriate presumptions, . . . factors both for and against [d]efendant[s'] admission into PTI, and the public policy of the State of New Jersey," the prosecutor maintained his rejection. The prosecutor's February 24 and 27, 2019 rejection letters relied initially on the "presumption against admission . . . for a defendant charged with violence" contained in N.J.S.A. 2C:43-12(b)(2)(b).

The prosecutor also relied on factors 1, 2, 3, 4, 5, 6, 7, 10, 11, 14, and 17 of the statute to support his decision against admission. See N.J.S.A. 2C:43-12(e)(1) ("[t]he nature of the offense"); N.J.S.A. 2C:43-12(e)(2) ("[t]he facts of the case"); N.J.S.A. 2C:43-12(e)(3) ("[t]he motivation and age of the defendant"); N.J.S.A. 2C:43-12(e)(4) ("the desire of the . . . victim to forego prosecution"); N.J.S.A. 2C:43-12(e)(5) ("[t]he existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and . . . controlled by proper treatment"); N.J.S.A. 2C:43-12(e)(6) ("[t]he likelihood that the applicant's crime is related to a condition or situation that would be

A-4588-18

conducive to change through his [or her] participation in supervisory treatment"); N.J.S.A. 2C:43-12(e)(7) ("[t]he needs and interests of the victim and society"); N.J.S.A. 2C:43-12(e)(10) ("[w]hether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior"); N.J.S.A. 2C:43-12(e)(11) ("[c]onsideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act"); N.J.S.A. 2C:43-12(e)(14) ("[w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution"); and N.J.S.A. 2C:43-12(e)(17) ("[w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program").

Regarding factors 1, 2, 3, and 10, the prosecutor described the conduct as "a group melee against a single individual" who was "targeted[,] . . . trapped and mercilessly attacked." Although the victim did not actually "suffer significant bodily injury," the criminal act "was assaultive in nature," and defendants "acknowledged that the purpose of the assault was to cause

7

significant bodily injury."[2]  According to the prosecutor, "all [d]efendants entered the grocery store; all [d]efendants confronted the victim; and all [d]efendants . . . helped in their own way to culminate the crime."  The prosecutor explained that defendant Rodriguez's attempt to mitigate her conduct by contending "that she only blocked the victim's escape path," and defendant Silva's contention "that the physical contact only resulted in minor injuries," did not relieve either defendant of responsibility because "no matter how large or small a role each [d]efendant played in the culmination of this cowardly act, all [d]efendants [were] legally culpable."  The prosecutor acknowledged that defendant Silva's "young age" of "[twenty-two] years old, slightly weigh[ed] in favor of . . . admission."  However, the prosecutor balanced that factor against "[d]efendant's motivation in the commission of the crime."  Attributing both defendants' motivation "to the desire to injure another human being," the prosecutor found the motivation "to be reprehensible, rather than . . . innocuous."

As to factors 5 and 6, according to the prosecutor, neither defendant "pointed to [any] . . . mental or physical health factor or other consideration which would absolve [them] of the current charges" or "could not [be]

---

[2]  This acknowledgment was encompassed in defendants' entry of guilty pleas to third-degree aggravated assault.

address[ed] through the criminal justice process." Specifically, both defendants "denie[d] any substance abuse . . . or mental health" issue that contributed to the crime and would be conducive to change through participation in supervisory treatment. As to factors 4, 7, 11, 14, and 17, the prosecutor noted that the victim did not want "to forego prosecution" and opposed defendants' entry into PTI. Further, "the nature and circumstances of th[e] crime indicate[d] that punishment, and deterrence [were] appropriate in this situation" for the needs and interests of the victim as well as "society as a whole." In support, the prosecutor pointed out that defendants' conduct "was a purposeful crime intended to cause injury," rather than "borne out of necessity or a victimless lapse in judgment," and because neither defendant identified "any social factor contributing to the . . . offense," "prosecution would not exacerbate anything."

Additionally, according to the prosecutor, "abandoning criminal prosecution . . . would present a greater harm to society than permitting [d]efendant[s'] application to PTI." In that regard, the prosecutor noted that this was not a case in which either defendant held "a special license" or was "currently working." On the contrary, defendant Rodriguez "ha[d] not attained a GED," "express[ed no] desire to continue any education," and was "not

currently employed." Although defendant Silva "hope[d] to obtain a GED in the near future," and had a "[laudable] past work history," her future employment prospects would not be "at particular risk of jeopardy upon this conviction."

On the other hand, in mitigation, the prosecutor acknowledged that factors 8, 9, 12, 13, 15, and 16 weighed in favor of admission. See N.J.S.A. 2C:43-12(e)(8) ("[t]he extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior"); N.J.S.A. 2C:43-12(e)(9) ("[t]he applicant's record of criminal and penal violations and the extent to which he [or she] may present a substantial danger to others"); N.J.S.A. 2C:43-12(e)(12) ("[t]he history of the use of physical violence toward others"); N.J.S.A. 2C:43-12(e)(13) ("[a]ny involvement of the applicant with organized crime"); N.J.S.A. 2C:43-12(e)(15) ("[w]hether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing [her] case through traditional criminal justice system procedures"); and N.J.S.A. 2C:43-12(e)(16) ("[w]hether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants"). Specifically, although defendant Rodriguez "had adverse interaction[s] with law enforcement on two

prior occasions," the prosecutor conceded that both defendants had no prior "criminal conviction[s]" and "no connection with organized crime." Further, all four defendants "pled guilty at the same time."

Nonetheless, "[i]n balancing the factors," the prosecutor maintained that admission into PTI was "antithetical to the purpose and policy of PTI." The prosecutor explained:

> It is public policy to deter prosecution when deterrence will provide "early rehabilitative services [which are] expected to deter future criminal behavior [and] there is an apparent causal connection between the offenses charged and the rehabilitative need. . . ." N.J.S.A. 2C:43-12(a)(1). Further, public policy also indicates the need to "provide an alternative to prosecution to applicants who might be harmed by the imposition of criminal sanctions" and to provide a mechanism to deal with "victimless" crimes. See [ibid.] This case does not fall within any public policy espoused by the PTI statute. . . . There is no rehabilitative treatment expected to assuage the cause of this crime. Further, there is no harm to [d]efendant[s], educationally or vocationally[,] . . . and there is an identifiable victim in this matter.

Moreover, according to the prosecutor, "PTI has a specific and enumerated purpose" to "divert penitent individuals who commit victimless crimes out of desperation or necessity in an attempt to stop the impetus for the commission of crimes." However, the prosecutor pointed out that this policy was "in juxtaposition" to defendants' attempts to deflect "blame for [their]

11

actions." In that regard, the prosecutor noted that even after entering retraxit guilty pleas, during the pre-sentence investigation (PSI), defendants told the PSI writer "[they had] done nothing wrong," thereby failing to take "[full] responsibilit[y] for [their] actions" and "fail[ing] to show any remorse."

Following oral argument on defendants' respective motions to compel admission over the prosecutor's objection, Judge Bernard E. DeLury, Jr. determined that defendants "failed to overcome the burden by clear and convincing evidence to show that the [prosecutor's] exercise of discretion . . . constitute[d] a patent and gross abuse of discretion or a clear error of judgment." The judge found that the prosecutor "considered all appropriate facts and circumstances" and did not consider any "inappropriate factors." The judge's decision was informed by his review of the parties' oral and written submissions as well as the surveillance video of the incident. The judge explained, "[a]t its essence, this is a crime of violence . . . and the prosecutor's theory of the case makes [defendants] culpable either by their own hand or by aiding and abetting. . . ." Accordingly, the judge denied defendants' respective motions to compel admission and this appeal followed.

II.

12

A-4588-18

Deciding whether to permit a defendant to divert to PTI "is a quintessentially prosecutorial function," State v. Wallace, 146 N.J. 576, 582 (1996), for which a prosecutor is "granted broad discretion." State v. K.S., 220 N.J. 190, 199 (2015). It involves the consideration of the non-exhaustive list of seventeen statutory factors, enumerated in N.J.S.A. 2C:43-12(e), in order to "make an individualized assessment of the defendant considering his or her amenability to correction and potential responsiveness to rehabilitation." Roseman, 221 N.J. at 621-22 (internal quotation marks omitted) (quoting State v. Watkins, 193 N.J. 507, 520 (2008)). Under Rule 3:28-4, in addition to considering the seventeen individual factors listed in N.J.S.A. 2C:43-12(e), "[t]he nature of the offense should be considered in reviewing the application" and "[i]f the crime was . . . deliberately committed with violence or threat of violence against another person[,] . . . the defendant's application should generally be rejected." R. 3:28-4(b)(1).

That said, the scope of our review of a PTI rejection is severely limited and designed to address "only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)). Thus, "[i]n order to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that

A-4588-18

the prosecutor's decision constitutes a patent and gross abuse of discretion[,]'" meaning that the decision "has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." Watkins, 193 N.J. at 520 (first quoting State v. Watkins, 390 N.J. Super. 302, 305-06 (App. Div. 2007); and then quoting Wallace, 146 N.J. at 582-83).

In that regard, an abuse of discretion occurs where it can be proven "that the [PTI] denial '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. . . .'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting State v. Bender, 80 N.J. 84, 93 (1979)). "In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI]." Roseman, 221 N.J. at 625 (quoting Bender, 80 N.J. at 93). "The extreme deference which a prosecutor's decision is entitled to in this context translates into a heavy burden which must be borne by a defendant when seeking to overcome a prosecutorial veto of his [or her] admission into PTI." State v. Kraft, 265 N.J. Super. 106, 112 (App. Div. 1993).

Applying these principles here, we find no basis to disturb the judge's decision sustaining the prosecutor's veto, a decision we review de novo. See State v. Denman, 449 N.J. Super. 369, 375-76 (App. Div. 2017). Defendant Rodriguez argues that "a remand . . . for reconsideration of her PTI application" is required because the prosecutor "mistakenly believed, and heavily relied upon the belief, that there was a presumption against admission for violent offenses." However, according to defendant Rodriguez, "the presumption against admission only applies to domestic violence."

N.J.S.A. 2C:43-12(b)(2)(b), upon which the prosecutor relied, provides in pertinent part that "[t]here shall be a presumption against admission into a program of supervisory treatment for . . . a defendant charged with any crime or offense involving domestic violence . . . if the crime or offense charged involved violence or the threat of violence." While we agree with defendant that the presumption contained in N.J.S.A. 2C:43-12(b)(2)(b) does not apply to a violent crime not "involving domestic violence," Rule 3:28-4(b)(1) clearly provides that PTI "should generally be rejected" if "the crime was . . . deliberately committed with violence or threat of violence against another person," as occurred here. Thus, Rule 3:28-4(b)(1) effectively creates a new

presumption against admission for all offenses involving violence or threat of violence.

Defendant Silva argues that she is "an ideal candidate for PTI" and disagrees with the prosecutor's "assessment" of the factors relied upon to support rejection. In particular, defendant Silva challenges the severity of the victim's injuries and the prosecutor's characterization of the offense, which Silva "characterize[s] as a petty scuffle." However, "that goes to the weight of the evidence, which standing alone 'is not dispositive in a court's review of the evaluation of [PTI] candidates.'" Nwobu, 139 N.J. at 256 (alteration in original) (quoting State v. Smith, 92 N.J. 143, 147 (1983)).

As to defendant Silva's disagreement with the prosecutor's assessment of the remaining factors, "[t]he question is not whether we agree or disagree with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Id. at 254. "A reviewing court 'does not have the authority in PTI matters to substitute [its own] discretion for that of the prosecutor.'" Id. at 253 (alteration in original) (quoting Kraft, 265 N.J. Super. at 112). We conclude defendants failed to clearly and convincingly establish that the prosecutor's decision went so wide

16

of the mark sought to be accomplished by PTI that fundamental fairness and justice require our intervention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4588-18