# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1311-23

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

A.V.,[1]

     Defendant-Respondent.

_____

Submitted October 29, 2024 – Decided December 12, 2024

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 23-05-0600.

Raymond S. Santiago, Monmouth County Prosecutor, attorney for appellant (Alecia Woodard, Assistant Prosecutor, of counsel and on the brief).

Ansell Grimm & Aaron, PC, attorneys for respondent (Mitchell J. Ansell, of counsel and on the brief).

---

[1] We use initials to protect the privacy of the victim. R. 1:38-3(c)(12).

PER CURIAM

The State of New Jersey appeals from a trial court order reversing the Monmouth County Prosecutor's Office's (MCPO) rejection of defendant's application for pre-trial intervention (PTI) and admitting defendant into the PTI program. After our review of the record, the arguments of the parties and the applicable legal principles, we reverse and remand for further proceedings.

I.

On two separate occasions in November and December of 2020, the MCPO's Internet Crimes Against Children Task Force received cyber tips reporting an individual, later identified as defendant, possessing Child Sexual Abuse Material (CSAM).

Based on this information, a communications data warrant was served on Google concerning defendant's account. The data received listed a username of "A.V." and an alternate email address containing defendant's full name in the iCloud email address provided. The data listed twenty-four log-in events between October 2020 through December 2020, twenty-three of which utilized a certain internet protocol (IP) address. The report included several emails relevant to the investigation.

2

The first email in October 2020 was sent from one of defendant's email addresses to the other and contained two images of CSAM. The second email in November 2020 was sent to and from these same email addresses and contained attachments of CSAM. An additional email in December 2020, from the same email addresses contained four attachments of CSAM. An additional data communications warrant was obtained and served upon Apple to produce data relevant to the account holder of the icloud.com email address. The information obtained by the warrant produced eight videos and forty-two images of CSAM, one of which was a video located within the "Cloud Photo Library." Further, the data showed altered social media screenshots of two females, A.G. and M.H., who lived locally and were acquaintances of defendant.

In May 2021, based on the IP address, a search warrant was issued for defendant's residence as well as defendant. Upon execution of the search warrant, the investigators entered defendant's residence. The investigators informed him of the information, images, and videos which were uploaded to the internet. Defendant replied he knew exactly why the police were present.

Defendant advised the investigators he was the owner of one of the email accounts identified in the warrant, and he understood the police were present because of the photographs of M.H. During the search of the residence, police

3

found a cache of girls' underwear below defendant's bed. The police also removed numerous items from defendant's residence and delivered them to the New Jersey Regional Computer Forensics Laboratory for analysis. The analysis uncovered over one hundred files of CSAM.

Defendant was then taken to the police department where a recorded interview was held. During the interview, defendant admitted he began viewing the materials late summer or fall of 2020, while he was still seventeen years old. When questioned about the girls' underwear located under his bed, defendant explained he had a brief sexual interest in his eleven-year-old sister G.V. He spoke about an incident in which he walked into his sister's bedroom and saw her naked. Based on this brief interaction, defendant decided to take a pair of his sister's underwear. He disclosed to the police he would masturbate while wearing the underwear. Subsequently, defendant purchased additional pairs of underwear from various stores. Defendant denied ever touching his sister or other juveniles in a sexual manner.

Defendant further admitted he confessed to E.H.[2] in May 2021, that he had images and videos of CSAM on his phone and devices in his room. He

---

[2] E.H. is the father of M.H., one of the victims whose photo was digitally altered by defendant. E.H. is a friend of defendant's family and defendant worked for E.H.

explained he obtained images of M.H. and A.G. from social media and manipulated the images to make the girls appear naked. Defendant explained M.H. is his friend's younger sister and A.G. was his "crush" from middle school.

During the interview, defendant admitted he utilized the "Onion Router," a TOR[3] browser used to access the dark web to collect CSAM. He admitted to downloading fifty files of CSAM which he stored in a hidden file on his computer. Following the interview, defendant and his father spoke. Defendant told his father he was contemplating suicide because he feared a long jail sentence for a conviction of possession of CSAM. Defendant was then placed under arrest, processed on a complaint summons, and released.

The New Jersey Division of Child Protection and Permanency (DCPP) was notified of defendant's admissions concerning his younger sister. After its investigation, the DCPP closed the case without taking any action concerning defendant and did not remove him from his parent's home. Additionally, shortly after defendant's arrest, defendant began treatment with Howard D. Silverman, Ph.D.

---

[3] The TOR or "Onion Router" is a free, open-source web browser that allows users to anonymously access the internet.

A-1311-23

In May 2023, a Monmouth County Grand Jury returned an indictment charging defendant with third-degree endangering the welfare of a child (possession of child pornography), N.J.S.A. 2C:24-4(b)(5)(b)(iii). In June 2023, defendant applied for admission to the Monmouth County PTI program. On August 7, 2023, his probation officer determined defendant was not an appropriate candidate for PTI. On August 15, 2023, the State issued a memorandum rejecting defendant's application for PTI.

In its memorandum, the State determined the following factors under N.J.S.A. 2C:43-12(e) weighed positively in defendant's favor for admission into PTI: (3) the motivation and age of the defendant; (5) the existence of personal problems and character traits which may be related to the crime; (6) likelihood that defendant's crime is due to condition that would be conducive to change through PTI participation; (9) defendant's record and extent to which defendant may present a danger to others; (10) whether the crime is assaultive or violent in nature; (12) defendant's history of use of physical violence towards others; and (13) any involvement of defendant with organized crime.

The State found the following factors outweighed these positive factors and supported defendant's rejection from admission into PTI: (1) the nature of the offense; (2) the facts of the case; (7) the needs and interest of the victim and

6

society; (8) the extent to which the applicant's crimes constitutes part of a continuing pattern of anti-social behavior; (11) consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal acts; (14) whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution; and (17) whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from challenging an offender into a supervisory treatment program.

Defendant filed an appeal of the State's denial of his application for PTI to the Law Division. After hearing argument on defendant's appeal, the court rendered an oral decision and order. The court found the State's rejection of defendant into PTI was an "abuse of discretion" by considering irrelevant or inappropriate factors. Concerning N.J.S.A. 2C:43-12(e)(2), the "facts of the case" prong of the statute, the court highlighted DCPP's investigation which resulted in its closure of the case with no further action. The court found DCCP did not view defendant as a threat to his sister because it did not remove him from the home. Furthermore, the court found that the State's argument regarding the edited photographs of A.G. and M.H., "stretches beyond the limits of the

7

present case and seeks to hold defendant accountable for future conduct that he had not committed."

Concerning factor (e)(3), the motivation and age of defendant, the court found the State discounted defendant's young age and his amenability to correction and responsiveness to rehabilitation. The court stressed defendant's age at the time of the commission of the offense being only seventeen years old and his present age only being twenty years old. The court noted that during the past three years since defendant was in possession of CSAM, he has sought treatment from Dr. Silverman. Further, the court highlighted the reports from Dr. Silverman, describing defendant as "amenable to treatment and making progress." The court found defendant's young age and his ability to be rehabilitated were two "major factors that should be afforded proper [weight]" but were given "little weight" by the State. Lastly, the court found the State's critical view of defendant's initial suicidal ideations as "being dramatic" was inappropriate given his age and emotional state at the time of his arrest.

As to factors (e)(5) and (6), relating to defendant's behavior being remedied or changed through proper supervisory treatment, the court found Dr. Silverman's expert opinion to be "based upon the full breadth of the record" and therefore should have been afforded greater weight by the State. The court

8

found there was nothing in the record to establish that defendant was not forthcoming with Dr. Silverman during his sessions, noting defendant's PTI interview showed him to be a compliant person.

Next, under (e)(7), the needs and interests of the victim and society, the court found the State was categorically barring defendant from PTI. The court noted the bulk of the charged offenses occurred while defendant was still a minor, and since he has been charged, he underwent psychological treatment, enrolled in college, and has ultimately otherwise been a positive contributing member of society. The court noted its disagreement with the State's decision to proceed through the normal form of prosecution, highlighting defendant's possibility of being subject to imprisonment, probation, parole supervision, and Megan's Law, N.J.S.A. 2C:7-1 to - 23. The court found the State did not conduct an "individualized assessment of this applicant's character and background" and disagreed with the characterization by the State that allowing the defendant into PTI would essential be a "free pass."

Concerning factor (e)(8), the pattern of antisocial behavior, the court found the State failed to acknowledge the expert opinion of Dr. Silverman, who "directly contradicts this finding." The court highlighted the amount of time defendant spent with Dr. Silverman over the past two to three years and

9

considered his opinion which differed from the State's analysis. Further, the court noted the three instances relied upon by the State were the only three instances of alleged antisocial behavior by defendant and his only contact with the criminal justice system. The court found the heavy weight given by the State to this factor without acknowledging Dr. Silverman's report was an abuse of discretion.

The court found the prosecutor's decision must clearly subvert the goals of PTI for it to be considered a "gross and patent abuse of discretion." The court then highlighted the goals of PTI and found defendant demonstrated he can be rehabilitated, evidenced by his record remaining arrest free and his willingness to address his mental health issues. The court further found a criminal conviction of defendant would be present for the rest of his life, based only on the State's allegation that he needed to be deterred from future conduct "makes no sense" because defendant has shown remorse, is attending college, working, and is a productive member of society.

The court noted the seriousness of the offense but found defendant has shown his ability to be rehabilitated and therefore should be given the opportunity for PTI. In doing so, the court ordered defendant to serve a three-year term with conditions including that he must continue with his treatment

until medically discharged; that he must have no unsupervised contact with children under 18; that he must sign and execute an agreement to restrict his internet usage; and that he must strictly comply with PTI. The court noted that if he fails to abide by any of the above conditions, probation will notify the court immediately.

On appeal, the State argues the court impermissibly weighed the factors of the statute and wrongfully substituted its judgment which the statute bestows to the State. The State also raises for the first time on appeal that defendant was presumptively ineligible for admission into PTI because he was charged with possession of over one hundred items of CSAM subjecting him to a presumption of imprisonment pursuant to N.J.S.A. 2C:24-4b(5)(b) and disqualifying him from PTI unless the State consented to his admission pursuant to Rule 3:28-1(d)(1).

## II.

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Gomes, 253 N.J. 6, 16 (2023) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). "[T]he primary purpose of PTI has been 'to assist in the rehabilitation of worthy defendants, and, in the

process, to spare them the rigors of the criminal justice system.'"  Id. at 17 (quoting State v. Watkins, 193 N.J. 507, 513 (2008)).  "PTI eligibility has been broadly defined, subject to specified exclusions, to 'include[] all defendants who demonstrate the will to effect necessary behavioral change such that society can have confidence that they will not engage in future criminality.'"  Ibid. (quoting Watkins, 193 N.J. at 513).  The State "may consider a wide array of factors when determining whether to recommend someone for PTI," including "'[t]he nature of the offense,' the motivations of the defendant, the desires of the victim or complainant with respect to prosecution, the social harm perpetrated by the defendant, and '[t]he extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior.'"  Ibid. (quoting N.J.S.A. 2C:43-12(e)).

"[W]hether to admit a particular defendant into PTI has been treated as a fundamental prosecutorial function."  Id. at 18.  Accordingly, courts afford prosecutors "broad discretion" in determining whether a defendant should be diverted into PTI, "[f]irst, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options."  State v. Chen,

465 N.J. Super. 274, 284 (App. Div. 2020) (first quoting State v. K.S., 220 N.J. 190, 199 (2015); and then quoting Nwobu, 139 N.J. at 246).

Given that broad discretion, "our review of a prosecutor's denial of a PTI application is 'severely limited.'" State v. E.R., 471 N.J. Super. 234, 244-45 (App. Div. 2022) (quoting State v. Negran, 178 N.J. 73, 82 (2003)). "Judicial review of a prosecutor's decision about PTI admission is 'available to check only the most egregious examples of injustice and unfairness.'" Gomes, 253 N.J. at 18 (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)).

"[T]o overturn a prosecutor's decision to exclude a defendant from the program the defendant must 'clearly and convincingly' show that the decision was a 'patent and gross abuse of . . . discretion.'" K.S., 220 N.J. at 200 (quoting State v. Wallace, 146 N.J. 576, 582 (1996)).

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [State v. Johnson, 238 N.J. 119, 129 (2019)]

In State v. Mickens, we succinctly described the task at hand:

13

> [T]he appellate court must distinguish between prosecutorial abuse consisting of the failure to consider all relevant factors specific to the individual candidate and prosecutorial abuse represented by a judgment reached after a full consideration. In the first instance, it is the obligation of the reviewing court to remand to the prosecutor for reconsideration. In the second instance, the reviewing court is free to conclude that the abuse "arises from a clear error of judgment," and, if it does so, it "may order that a defendant be admitted into the program."
>
> [State v. Mickens, 236 N.J. Super. 272, 277-278 (App. Div. 1989) (quoting State v. DeMarco, 107 N.J. 562, 567 (1987)).]

Because "[i]ssues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law,'" we review those legal determinations de novo. E.R., 471 N.J. Super. at 245 (quoting State v. Denman, 449 N.J. Super. 369, 376 (App. Div. 2017) (alterations in the original)).

## III.

We determine the State's argument raised for the first time on appeal—that defendant was not eligible for PTI pursuant to N.J.S.A. 2C:24-4b(5)(b) and Rule 3:28-1— holds merit. We conclude a remand to the trial court for the State to resubmit its argument on this point as well as to reconsider and resubmit its other reasons for its rejection of defendant into PTI is appropriate.

14

Appellate courts will generally refrain from considering issues raised for the first time on appeal "unless they are jurisdictional in nature or substantially implicate public interest." See State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

N.J.S.A. 2C:24-4b(5)(b) provides for a presumptive term of imprisonment based on the number of items of CSAM possessed by a defendant. The statute states in relevant part:

> Notwithstanding the provisions of subsection e. of N.J.S.A. 2C:44-1, in any instance where a person was convicted of an offense under this subparagraph that involved 100 or more items depicting the sexual exploitation or abuse of a child, the court shall impose a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

Rule 3:28-1: Eligibility for Pretrial Intervention, at section (d)(1) states in pertinent part:

> (d) Persons Ineligible for Pretrial Intervention Without Prosecutor Consent to Consideration of the Application.
>
> The following persons who are not ineligible for pretrial intervention under paragraph (c) shall be ineligible for pretrial intervention without prosecutor consent to consideration of the application:

> (1) Certain Crimes. — A person who is charged with a crime, or crimes, for which there is a presumption of incarceration or a mandatory minimum period of parole ineligibility.

We conclude the presumptive term of incarceration under N.J.S.A. 2C:24-4b(5)(b) in conjunction with the requirements of Rule 3:28-1 may bar an applicant's admission into PTI for convictions for possession of a certain number of CSAM items. We determine the goals and purposes of the PTI statute and its standards for admission of an applicant is an issue of important public concern. A principal purpose of PTI involves the protection of the public because acceptance into a PTI program considers an applicant's ability to engage in behavioral change to provide society with confidence that an applicant "will not engage in future criminality." See Gomes, 253 N.J. at 17. We determine the protection of the public is certainly an important public concern. Although we note the State did not consent to defendant's admission into PTI as required by the rule since this point was not raised or argued before the trial court, we further observe, the court did not reference the statute or rule and its potential applicability to the facts in this matter despite recognizing in its decision that the defendant had the "possibility of being subject to imprisonment."

We further note, in support of its order, the court considered the report of Dr. Silverman over the State's objection and found the State's argument under

16

factor eight of the statute was overcome by the findings in his report. The State argued defendant failed to reference or supply the documents or other information which Dr. Silverman relied upon in rendering his opinion which limited the State in its argument for the court to reject Dr. Silverman's opinions. We agree.

On remand, defendant shall supply a copy of the documents or other materials Dr. Silverman considered or relied upon in rendering his opinion concerning defendant. We leave to the court's sound discretion whether the State is entitled to further relief including but not limited to the production of defendant for a mental health evaluation so it may submit its own expert opinion for the court's consideration.

The court shall consider anew defendant's application as well as the State's amended reasons supporting its rejection of defendant into PTI after receipt of the above information from Dr. Silverman. We decline to decide the remainder of the parties' arguments at this time based on our determination to remand the matter for the reasons expressed herein.

The court should take into consideration established legal principles which require the State's reasons for rejection of the defendant into PTI must be afforded "broad discretion" which can only be overcome through defendant

meeting his enhanced burden to clearly and convincingly demonstrate the State's decision was a patent and gross abuse of discretion. See K.S., 220 N.J. at 200. We further posit our Court has held a clear error of judgment is one that "could not have reasonably been made upon a weighing of the relevant factors . . . [and reviewing courts should] avoid the substitution of [its] judgment for the judgment of the [prosecutor, who is] responsible for the function involved." See Nwobu, 139 N.J. at 254.

Reversed and remanded for further proceedings consistent with this opinion. Remand should be completed within ninety-days of this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION