# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0299-22
                    A-0300-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHRISTOPHER W. HEDDY,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

STEPHEN M. LAFOLLETTE,

     Defendant-Appellant.

_____

     Submitted February 28, 2024 – Decided April 9, 2024

     Before Judges Accurso and Gummer.

     On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 21-02-0026.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant Christopher W. Heddy (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Nicole Sellitti, Public Defender, attorney for appellant Stephen M. LaFollette (Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the brief).

Carolyn Murray, Acting Sussex County Prosecutor, attorney for respondent (Shaina Brenner, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In these back-to-back appeals, which we consolidate for purposes of issuing a single opinion, defendants Christopher W. Heddy and Steven M. LaFollette appeal from an order denying their motions for entry into the pre-trial intervention (PTI) program and subsequent convictions. LaFollette also contends his sentence was excessive. Agreeing with the trial court that the prosecutor's rejection of defendants' PTI applications was not a gross and patent abuse of discretion and discerning no error in LaFollette's sentence, we affirm.

I.

During a warranted search of the home defendants shared,[1] law-enforcement officers seized various electronic devices, including at least one computer and several external hard drives. Those devices collectively contained hundreds of thousands of images depicting the sexual exploitation or sexual abuse of children, including images of children engaged in sexual intercourse. On October 8, 2019, defendants were arrested and charged in complaint-warrants with second-degree child endangerment ("possessing over one-hundred (100) images depicting the sexual exploitation of a minor on a computer or device that also had a peer-to-peer/file sharing network on it"), in violation of N.J.S.A. 2C:24-4(b)(5)(a)(iii), and third-degree child endangerment ("knowingly possessing over one-hundred (100) images depicting the sexual exploitation of a minor on an external hard drive"), in violation of N.J.S.A. 2C:24-4(b)(5)(b)(iii).

LaFollette submitted a PTI application dated October 31, 2019. A probation officer recommended he be admitted into the program. The State disagreed and denied his application, explaining its reasons for doing so in a letter submitted pursuant to Rule 3:28-9. The State indicated PTI was "presumptively inappropriate" for LaFollette because he was "subject to a

---

[1] LaFollette was the boyfriend of Heddy's mother, who died in 2007.

3    A-0299-22

presumption of incarceration in light of his pending charges." The State also noted he had "prior charges from California with an unknown disposition" and found his "attitude suggest[ed] a lack of remorse or regret." The State cited paragraphs one through three, five through eight, ten, fourteen, and seventeen of N.J.S.A. 2C:43-12(e) as weighing against his admission into PTI. The State asserted LaFollette's "possession of a cache of illicit and illegal images that he carefully organized and curated at home" was "not to be considered one of the 'victimless crimes' typically found to be appropriate for PTI."

On November 14, 2019, Heddy submitted a PTI application, which included a letter from his counsel "set[ting] forth the compelling reasons that justify consideration of his PTI application without the consent of the prosecutor." She included information about his age (thirty-eight years), the lack of any prior arrests or convictions, his family life, the early death of his parents, his cooperation with law-enforcement officials, his lack of contact with the children depicted in the videos and lack of participation in the creation of the videos, and his willingness to apply for his GED, become employed, obtain a medical evaluation, follow treatment recommendations, and accept reasonable restrictions on his use of computers in the future. The State denied Heddy's application, setting forth the reasons for its denial in a letter submitted pursuant

A-0299-22

to Rule 3:28-9(a). The State found PTI was "presumptively inappropriate" for Heddy because his pending charges had a presumption of incarceration. The State cited paragraphs one through three, five through eight, ten, and fourteen of N.J.S.A. 2C:43-12(e) as weighing against his admission into PTI.

Defendants appealed in the Law Division the State's denials of their PTI applications. In his submission to the Law Division, LaFollette faulted the State for "attempt[ing] to cast a negative light on [him], but omit[ting] nearly all of [his] history and character." He highlighted his recent acceptance into a counseling program, the assistance he had given to Heddy and others, his history of deep vein thrombosis and blood clots, a 2002 work-related injury, the financial support he had received from others, and that he had not participated in making child pornography.

In his submission to the Law Division, Heddy identified "personal problems which may have led [him] to commit the crimes," describing them as "factors which led to his having too much time on his hands, resulting in this offense": the early death of his father, his withdrawal from high school, and the financial support he has received, which enabled him to remain jobless. Referencing the State's assertion his crime was not "victimless," Heddy stated he "had no involvement in procuring or posting the images he accessed" and had

not met the children depicted in those images. He noted his eye issues and recent diagnosis of high blood pressure and made the unsupported contention he "is likely suffering from a diagnosable mental health condition . . . leading to the commission of the crime." Heddy disputed the State's conclusion he had exhibited a pattern of anti-social behavior, asserting "[w]hat he was doing was exhibiting a pattern of behavior of a person who lacked sufficient social stimulation and other worthwhile outlets for his talents." Heddy characterized as "weak" the State's reliance on factor fourteen.

During argument, Judge Louis S. Sceusi summarized the facts set forth before him, including that approximately 100,000 "alleged images and videos depicting the alleged sexual exploitation of minors [had been] recovered from the hard drives located in [defendants'] residence." Defense counsel did not dispute that statement. The assistant prosecutor stated, "defendants had hundreds of thousands of images of child porn on their computers," "there is damage that has occurred to these victims," and Heddy had "[sought] out over an extended period of time vast amounts of child porn." Defense counsel did not dispute those assertions. Heddy's counsel described defendants as two people who "just had too much time on their hands." LaFollette's counsel disputed her client was "a violent individual" but emphasized she was "not

6

arguing this was a victimless crime" and acknowledged, "this is a serious offense . . . [a]nd having [these images] and sharing them . . . does have a tendency to perpetuate the continual making of [child pornography]."

On June 25, 2020, Judge Sceusi entered an order denying defendants' appeal of the State's rejection of their PTI applications. In a comprehensive written opinion, the judge found neither defendant had proved by clear and convincing evidence the State's decision to deny their applications was a patent and gross abuse of discretion.

On February 4, 2021, a grand jury returned an indictment charging LaFollette and Heddy with "knowingly possess[ing], view[ing], or hav[ing] under his control . . . 100,000 or more items depicting the sexual exploitation or abuse of a child," a first-degree violation of N.J.S.A. 2C:24-4(b)(5)(b)(i); and "knowingly stor[ing] or maintain[ing] an item depicting the sexual exploitation or abuse of a child using a file-sharing program which is designated as available for searching by or copying to one or more other computers," a second-degree violation of N.J.S.A. 2C:24-4(b)(5)(a)(iii). The indictment also charged LaFollette with "knowingly distribut[ing] items depicting the sexual exploitation or abuse of a child," a second-degree violation of N.J.S.A. 2C:24-4(b)(5)(a)(i), and "knowingly possess[ing] items depicting the sexual

exploitation or abuse of a child with the intent to distribute the items," a second-degree violation of N.J.S.A. 2C:24-4(b)(5)(a)(ii).

Pursuant to negotiated plea agreements in which the State agreed to recommend ten-year prison sentences subject to Megan's Law, N.J.S.A. 2C:7-1 to -19, and other conditions and to dismiss the remaining counts of the indictment, defendants pleaded guilty to first-degree endangering the welfare of children, in violation of N.J.S.A. 2C:24-4(b)(5)(b)(i). At his plea hearing, LaFollette admitted he knowingly had possessed a computer and other devices that contained almost half a million images and videos showing children involved in sexual activity, including intercourse. At his plea hearing, Heddy admitted he knowingly had possessed electronic devices containing approximately 294,000 images depicting the sexual exploitation or abuse of a child, including images and videos of children engaging in sexual intercourse.

At the sentencing hearings, each defense counsel asked the sentencing judge to reduce the degree of the crime and impose a sentence not to exceed five years. The State asked the judge to sentence defendants in accordance with the plea agreement. LaFollette under oath acknowledged and agreed with a finding contained in "the Avenel Report" that he was "a repetitive and compulsive violator when it comes to child pornography." Discussing a letter LaFollette

had sent to the judge, defense counsel said LaFollette had written he "had been struggling with [his child pornography addiction] for a long time."

The judge denied defendants' requests to lower the degree of their crimes. He found aggravating factors three (risk defendant will commit another offense), N.J.S.A. 2C:44-1(a)(3), and nine (need to deter the defendant and others from violating the law), N.J.S.A. 2C:44-1(a)(9), and mitigating factor seven ("defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"), N.J.S.A. 2C:44-1(b)(7). The judge sentenced each defendant to a ten-year term of imprisonment and imposed $4,955 in assessments and penalties. The judge also ordered defendants be placed on parole supervision for life, N.J.S.A. 2C:43-6.4, register as sex offenders, N.J.S.A. 2C:7-2, and forfeit all devices seized.

On appeal, Heddy challenges the prosecutor's rejection of his PTI application, arguing:

> THE PROSECUTOR'S REJECTION OF DEFENDANT'S ADMISSION INTO THE PRE-TRIAL INTERVENTION PROGRAM WAS AN ARBITRARY, PATENT, AND GROSS ABUSE OF DISCRETION WHICH MUST BE CORRECTED BY THIS COURT.

In addition to making that same argument, LaFollette challenges his sentence:

9

THE SENTENCE IS EXCESSIVE WHERE THE TRIAL COURT DOUBLE COUNTED, RELIED ON FACTS NOT IN EVIDENCE AND FAILED TO FIND MITIGATING FACTORS SUPPORTED BY FACTS IN THE RECORD.

Unpersuaded by those arguments, we affirm.

II.

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Gomes, 253 N.J. 6, 16 (2023) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). "[T]he primary purpose of PTI has been 'to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system.'" Id. at 17 (quoting State v. Watkins, 193 N.J. 507, 513 (2008)). "PTI eligibility has been broadly defined, subject to specified exclusions, to 'include[ ] all defendants who demonstrate the will to effect necessary behavioral change such that society can have confidence that they will not engage in future criminality.'" Ibid. (quoting Watkins, 193 N.J. at 513). The State "may consider a wide array of factors when determining whether to recommend someone for PTI," including "'[t]he nature of the offense,' the motivations of the defendant, the desires of the victim or complainant with respect to prosecution, the social harm perpetrated by the

defendant, and '[t]he extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior.'" Ibid. (quoting N.J.S.A. 2C:43-12(e)).

"[W]hether to admit a particular defendant into PTI has been treated as a fundamental prosecutorial function." Id. at 18. Accordingly, courts afford prosecutors "broad discretion" in determining whether a defendant should be diverted into PTI, "[f]irst, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." State v. Chen, 465 N.J. Super. 274, 284 (App. Div. 2020) (first quoting State v. K.S., 220 N.J. 190, 199 (2015); and then quoting Nwobu, 139 N.J. at 246).

Given that broad discretion, "our review of a prosecutor's denial of a PTI application is 'severely limited.'" State v. E.R., 471 N.J. Super. 234, 244-45 (App. Div. 2022) (quoting State v. Negran, 178 N.J. 73, 82 (2003)). "Judicial review of a prosecutor's decision about PTI admission is 'available to check only the most egregious examples of injustice and unfairness.'" Gomes, 253 N.J. at 18 (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)). "[T]o overturn a prosecutor's decision to exclude a defendant from the program the defendant must 'clearly and convincingly' show that the decision was a 'patent and gross

A-0299-22

abuse of . . . discretion.'" K.S., 220 N.J. at 200 (quoting State v. Wallace, 146 N.J. 576, 582 (1996)).  A patent and gross abuse of discretion occurs when "the [PTI] denial:  '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'"  State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).  Because "[i]ssues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law,'" we review those legal determinations de novo. E.R., 471 N.J. Super. at 245 (quoting State v. Denman, 449 N.J. Super. 369, 376 (App. Div. 2017) (alterations in the original)).

In determining whether a defendant should be diverted into PTI, a prosecutor must make an "individualized assessment of the defendant," State v. Roseman, 221 N.J. 611, 621-22 (2015), based on the defendant's "amenability to correction" and potential "responsiveness to rehabilitation," Watkins, 193 N.J. at 520 (quoting N.J.S.A. 2C:43-12(b)).  In making that assessment, prosecutors must consider seventeen non-exclusive factors listed in N.J.S.A. 2C:43-12(e) and additional factors regarding the nature of the offense set forth in Rule 3:28-4(b)(1). E.R., 471 N.J. Super. at 246; RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 473 n.4 (2018).  The weight given to those factors

A-0299-22

is left to the prosecutor's discretion. Wallace, 146 N.J. at 585-86. A court presumes a prosecutor considered "all relevant factors" when making a PTI determination unless the defendant demonstrates otherwise. Id. at 584.

On appeal, Heddy asserts that "[a]s a non-violent, first-time offender who expressed an attitude conducive to rehabilitation, [he] should have been afforded the opportunity for reform through the PTI program." Specifically addressing the factors under N.J.S.A. 2C:43-12(e), Heddy contends the State inappropriately found as weighing against his admission into PTI factor six ("likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment") because he never had a job, factor eight ("extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior") based on the present offenses, and factor ten ("whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior") "based on the notion that the possessory offenses here constituted acts of violence." Heddy also asserts the State failed to demonstrate factor ten because "there is no evidence [he] did anything to support the marketplace [for child pornography]." Heddy argues the State's rejection of his PTI application "constituted a patent and gross

13

abuse of discretion" because its "predominant focus . . . was the nature and facts of the offenses."

LaFollette "recognizes that he had accumulated a great number of images and videos" but criticizes the State's decision for "seem[ing] to be solely based on this fact, failing to take into consideration important factors and relying on assumptions not based [o]n facts [i]n the record." He faults the State for "plac[ing] too much emphasis on the offense itself" and for failing to adequately consider his remorse and "other factors relevant to his amenability to rehabilitation," including his efforts since his arrest to seek help and attend therapy, the medical conditions that purportedly prevented him from being employed, his care for ill loved ones, and the trauma he experienced from their deaths. LaFollette argues the State erred in considering factor eight because his offense did not itself demonstrate a continuing pattern of anti-social behavior and factor ten because his offense was not a crime of violence. He asserts the State's "emphasis on the details of the offense and how the public would view [his] admission to PTI" was a patent and gross abuse of discretion.

We agree with Judge Sceusi; neither defendant proved by clear and convincing evidence the State's decision to deny his PTI application was a patent and gross abuse of discretion. Defendants did not demonstrate the State failed

14

to consider or to consider adequately the applicable factors. See Wallace, 146 N.J. at 584 (finding a court presumes the State considered "all relevant factors" when making a PTI determination unless the defendant demonstrates otherwise). The State in its denial letters explicitly stated it had reviewed "all discovery related to the matter," "defendant's PTI application," defense counsel's letter in support of the application, "the PTI Recommendation report," and "the applicable factors for admission into the Program and the statutory criteria set forth in N.J.S.A. 2C:43-12(e)(1) through (17)." The State then identified and described the factors it believed weighed against defendants' admission into PTI.

A prosecutor is not required to "provide a defendant with a detailed report outlining every step taken en route to his [or her PTI ] decision." State v. Waters, 439 N.J. Super. 215, 234 (App. Div. 2015) (quoting State v. Sutton, 80 N.J. 110, 117 (1979)). "At a minimum, the prosecutor 'should note the factors present in defendant's background or the offense purportedly committed which led [the prosecutor] to conclude that admission should be denied.'" Ibid. (alteration in original) (quoting Nwobu, 139 N.J. at 249). Here, the State met that minimum by stating the reasons why defendants' applications were rejected with enough "specificity so that defendant[s] ha[d] a meaningful opportunity to demonstrate

that they are unfounded." Nwobu, 139 N.J. at 249 (quoting State v. Maddocks, 80 N.J. 98, 109 (1979)).

That the State gave more weight to the nature of the offense and facts of defendants' cases than to factors defendants emphasize was within the State's discretion. And in relying on the nature of defendants' offenses and facts of their cases, the State did nothing wrong. The State did not make a blanket declaration that because defendants were consumers of child pornography, they could not participate in PTI. Instead, the State considered expressly the particular facts of the cases and specific information about defendants, thereby fulfilling its obligation to make an "individualized assessment[]." State v. Johnson, 238 N.J. 119, 127 (2019).

As to the individual factors referenced by defendants on appeal, the State did not abuse its discretion in weighing factor six against Heddy's admission. As Judge Sceusi found, Heddy had not provided any "medical proof" or "medically-verified mental health diagnosis" demonstrating he had a "condition that would be conducive to change through his participation in supervisory treatment," N.J.S.A. 2C:43-12(e)(6). And given that Heddy had not participated in school through graduation, had not participated in a GED program, and had not participated in any job, the State reasonably concluded the record contained

16

"little evidence" to support his ability to participate successfully in a rehabilitative program. LaFollette also failed to provide medical proof he had a condition that would be "conducive to change through his participation in supervisory treatment." The State acted within its discretion in declining to find LaFollette's post-arrest remorse or enrollment in therapy overcame the presumption against admission or outweighed other factors disfavoring admission.

Defendants fault the State for considering defendants' actions as "continuing pattern[s] of anti-social behavior" under factor eight, N.J.S.A. 2C:43-12(e)(8). When they submitted their PTI applications and when Judge Sceusi considered their appeals, defendants had been charged with knowingly possessing over one hundred images depicting the sexual exploitation of a minor. During argument on their appeal before Judge Sceusi, defendants did not dispute the State's contention that they, in fact, possessed hundreds of thousands of images of child pornography – a multiple of a thousand of the threshold number required for the crimes for which they had been charged. Heddy's counsel did not dispute the State's assertion he had "[sought] out over an extended period of time vast amounts of child porn." On that record, we perceive no abuse of discretion in the State's consideration of factor eight.

A-0299-22

Defendants contend the State inappropriately considered factor ten, arguing their crimes did not include an act of violence. Under factor ten, however, the "assaultive or violent nature" of the crime is not determined solely based on "the criminal act itself" but also on "the possible injurious consequences of such behavior." N.J.S.A. 2C:43-12(e)(10).

During argument before Judge Sceusi, LaFollette's counsel made clear she was "not arguing this was a victimless crime," acknowledged "this is a serious offense," and conceded "having [these images] and sharing them . . . does have a tendency to perpetuate the continual making of it." Heddy's assertion that the record contains "no evidence Heddy did anything to support the [child pornography] marketplace" is belied by the undisputed fact he had spent an extended period of time seeking out and retaining "vast amounts of child porn." His contention that "[d]ownloading, storing, and viewing such images does nothing to fuel the market for them" is unsupported and flies in the face of logic.

The direct victims of defendants' crimes are the children depicted in the hundreds of thousands of images in their possession, children who were subjected to sexual abuse for the creation of the child pornography obtained and retained by defendants and other consumers and purveyors for their own sexual gratification. We perceive no abuse of discretion in the State's consideration of

18

factor ten. The "assaultive or violent nature" of defendants' crimes are demonstrated by "the possible injurious consequences" of those crimes: the sexual assault of the children used to create those images. N.J.S.A. 2C:43-12(e)(10).

LaFollette also appeals his sentence. We review a trial court's sentencing decision under an abuse-of-discretion standard. State v. Konecny, 250 N.J. 321, 334 (2022). We do "not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). We apply the deferential standard so long as the sentencing court "follow[ed] the Code and the basic precepts that channel sentencing discretion." State v. Case, 220 N.J. 49, 65 (2014); see also State v. Trinidad, 241 N.J. 425, 453 (2020). Thus, we affirm a sentence "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Rivera, 249 N.J. 285, 297-98 (2021) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). The same standard applies to sentences "result[ing] from guilty pleas, including those guilty pleas that are entered as part of a plea agreement." State v. Sainz, 107 N.J. 283, 292 (1987); see also Rivera, 249 N.J. at 297-98

(applying abuse-of-discretion standard to review sentence imposed based on guilty plea entered pursuant to a plea agreement).

On appeal, LaFollette argues the sentencing judge erred in finding aggravating factor three while giving less weight to mitigating factor seven. LaFollette contends the judge's conclusion defendant had been downloading and viewing child pornography for a long time was unsupported and the judge engaged in improper "double counting." LaFollette also faults the sentencing judge for failing to find mitigating factors eight ("defendant's conduct was the result of circumstances unlikely to recur") and nine (defendant's "character and attitude . . . indicate that the defendant is unlikely to commit another offense"). N.J.S.A. 2C:44-1(b)(8) and (9).

The sentencing judge concluded aggravating factor three applied because he concluded "there is a serious and significant risk of re-offense . . . when we are talking about hundreds of thousands of children who have been molested and seriously harmed in the making of child pornography images that the defendant had such an overwhelming appetite to draw on."

In finding mitigating factor seven applied but giving it "minimal weight," the judge acknowledged LaFollette had "led a law abiding life for [a] substantial

A-0299-22

period of time prior to the commission of the present offense" but "life experience, logic, common sense" and

> statements from the defendant about how and when he became in involved in this as his life began to spiral downward from the other events that he had described convince[d] the court that [defendant] was engaging in this activity for a substantial period of time prior to actually being arrested for the offense and thus why he was not . . . carrying on a law abiding life for a substantial period of time; he in fact was engaging in child pornography for an extended period of time but just hadn't been caught.

In rejecting mitigating factor eight, the judge noted defendant voluntarily had begun to participate in mental-health counseling "not too long after his arrest" but concluded defendant's level of addiction and acknowledged inability to control it prevented the judge from finding mitigating factor eight applied. The judge found mitigating factor nine did not apply for the same reasons and given "the sheer volume of the material that was located on the defendant's computer."

Unlike the defendant's sentence in Case, 220 N.J. at 54, LaFollette's sentence was not based on "unfounded assumptions." The judge's conclusion LaFollette had been downloading and viewing child pornography for a long time has ample support in the record, including his own admissions. At his plea hearing, LaFollette admitted he knowingly had possessed a computer and other

21

devices that contained almost half a million images and videos showing children involved in sexual activity. At his sentencing hearing, LaFollette agreed with the finding that he was "a repetitive and compulsive violator when it comes to child pornography," and his counsel stated LaFollette had admitted in a letter to the sentencing judge he "had been struggling with [his child pornography addiction] for a long time."

On that record, we find support for the judge's findings and perceive no abuse of discretion or legal error in the sentencing judge's findings regarding aggravating factors three and nine and mitigating factors seven through nine, no "double-counting," and no basis to disturb the sentence the judge imposed pursuant to the parties' agreement. Accordingly, we affirm LaFollette's sentence.

To the extent we have not otherwise commented on them, we have duly considered defendants' other arguments and conclude they lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0299-22