**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1277-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.H,[1]

     Defendant-Appellant.

_____

> Argued November 6, 2024 – Decided November 26, 2024
>
> Before Judges Gooden Brown and Chase.
>
> On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 22-03-0145.
>
> Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Brian P. Keenan, of counsel and on the briefs).
>
> Patrick R. Welsh, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theresa L. Hilton, Acting Mercer County Prosecutor, attorney; Laura C. Sunyak, Special

---

[1] We use initials to protect defendant's identity pursuant to Rule 1:38-3(c)(5).

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant J.H. appeals from his conviction for unlawful possession of a handgun. He contends the prosecutor committed a patent and gross abuse of discretion by rejecting his application for pretrial intervention ("PTI"). Defendant also claims the court misapplied the aggravating and mitigating factors in sentencing him. We affirm.

I.

The record shows that at approximately 7:20 p.m. on October 15, 2021, detectives were on patrol in Trenton. Detectives observed defendant, wearing an unzipped cross-body bag, sitting on the trunk of a vehicle as well as a handgun lying on the trunk next to defendant's right thigh. The gun was pointed away from the car within the reach of defendant. The trunk of the vehicle was closed. No firearm storage boxes were in defendant's area.

Based on their observations, the detectives approached, secured the firearm, and placed defendant under arrest. Defendant told detectives he had a permit for the handgun; they responded that they would look at any paperwork defendant had. However, defendant did not have any documentation on him. The firearm was loaded with one round of live ammunition in the firing chamber,

2

and a magazine loaded with several rounds of ammunition was found inside defendant's cross-body bag. Defendant told detectives he had just removed the firearm from his cross-body bag because it was getting heavy.

In March 2022, a grand jury returned an indictment charging defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b(1); and fourth-degree possession of a large-capacity magazine, N.J.S.A. 2C:39-3j. Following the indictment, defendant provided proof to the prosecutor's office that he did not possess a high-capacity magazine. The ballistics report also indicated that the magazine could hold only the legally permissible ten rounds.

Defendant applied for entry into PTI. In accordance with Rule 3:28-3(b)(1), defendant submitted statements of compelling reasons to justify his admission. Defendant explained that he was a twenty-seven-year-old lifelong resident of Trenton; had no prior contact with the criminal justice system; has a GED; two-children and a girlfriend of eleven years. He further argued that in high school he concentrated on his passion for the fine arts. He added that he became known as a talented artist in his community and has been asked on several occasions to assist with neighborhood improvement efforts by both consulting on mural work and donating his talent and materials to create murals. Moreover, he claimed that he had been burglarized several times and robbed

twice. He added he lawfully purchased and registered his gun for self-protection. Lastly, in his application, he claimed for the first time, that he was on the way to the firing range when he took the gun out and placed it on the hood of his car to rearrange items in his bag.

During the PTI intake interview, defendant indicated he obtained the firearm after another individual threatened to kill him, and that on the day he was arrested he went outside for less than one minute to get air. He remembers reading a text on his phone and the police approaching him out of nowhere, which ultimately lead to his arrest.

The prosecutor denied defendant's application after evaluating the relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:43-12(e) and Rule 3:28-4. Defendant filed an appeal of the prosecutor's PTI rejection. On August 18, 2023, following oral arguments, the trial court denied defendant's appeal, finding that the State considered all relevant factors, did not consider any irrelevant ones, and made no clear error in judgment. The trial court determined, therefore, that defendant failed to show by clear and convincing evidence that the prosecutor committed a patent and gross abuse of discretion in denying his application.

A-1277-23

Defendant then pled guilty to second degree unlawful possession of a firearm. On November 17, 2023, the court found aggravating factor nine and mitigating factors seven, eight, nine, and ten pursuant to N.J.S.A. 2C:44-1. The judge then granted a Graves Act[2] waiver and sentenced defendant in accordance with the plea agreement to a two-year term of probation.

On appeal, defendant raises the following contentions for our consideration:

> POINT I
>
> THE PROSECUTOR'S REJECTION OF DEFENDANT'S ADMISSION INTO THE PRE-TRIAL INTERVENTION PROGRAM WAS AN ARBITRARY, PATENT, AND GROSS ABUSE OF DISCRETION THAT MUST BE CORRECTED BY THIS COURT.
>
> POINT II
>
> THE SENTENCING COURT ERRED IN FAILING TO PROVIDE ITS REASONING FOR ACCORDING "GREAT WEIGHT" TO AGGRAVATING FACTOR 9, AND FAILING TO FIND MITIGATING FACTORS PRESENT IN THE RECORD.

II.

---

[2] The "Graves Act," N.J.S.A. 2C:43-6(c), refers to certain gun crimes that carry a mandatory minimum term of imprisonment and parole ineligibility. In this instance, the prosecutor agreed to waive the statutorily prescribed forty-two-month period of parole ineligibility pursuant to N.J.S.A. 2C:43-6.2.

We begin our analysis by acknowledging the legal principles governing this appeal. "PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Johnson, 238 N.J. 119, 127 (2019) (quoting State v. Roseman, 221 N.J. 611, 621 (2015)). The "primary goal" of PTI is the "rehabilitation of a person accused of a criminal offense . . . ." State v. Bell, 217 N.J. 336, 346 (2014). "It is designed 'to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system.'" State v. Randall, 414 N.J. Super. 414, 419 (App. Div. 2010) (quoting State v. Watkins, 193 N.J. 507, 513 (2008)).

In determining whether a defendant should be diverted into PTI, a prosecutor must make an "individualized assessment of the defendant . . . ." Roseman, 221 N.J. at 621–22. Our Supreme Court has consistently rejected categorical prohibitions against admission to PTI based on the offense charged. See State v. Caliguri, 158 N.J. 28, 39 (1999); State v. Baynes, 148 N.J. 434, 445 (1997). Thus, "PTI decisions are 'primarily individualistic in nature' and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." State v. Nwobu, 139 N.J. 236, 255 (1994) (quoting State v. Sutton, 80 N.J. 110, 119 (1979)).

6

When making that individualized assessment, prosecutors are required to consider a non-exhaustive list of factors enumerated in N.J.S.A. 2C:43-12(e):

> (1) The nature of the offense; (2) The facts of the case; (3) The motivation and age of the defendant; (4) The desire of the complainant or victim to forego prosecution; (5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment; (6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his [or her] participation in supervisory treatment; (7) The needs and interests of the victim and society; (8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior; (9) The applicant's record of criminal and penal violations and the extent to which he [or she] may present a substantial danger to others; (10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior; (11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act; (12) The history of the use of physical violence toward others; (13) Any involvement of the applicant with organized crime; (14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution; (15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his [or her] case through traditional criminal justice system procedures; (16)

Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and (17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

Importantly for purposes of this appeal, our Supreme Court has stressed that PTI decisions are a "quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996).

Accordingly, our review of a prosecutor's denial of a PTI application is "severely limited" and "serves to check only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis (Leonardis II), 73 N.J. 360, 384 (1977)). A reviewing court may overturn a prosecutor's rejection of a PTI application only when a defendant "'clearly and convincingly establish[es]' that the decision rejecting his or her application was 'a patent and gross abuse of discretion.'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting Watkins, 193 N.J. at 520). A patent and gross abuse of discretion occurs when "the [PTI] denial '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment . . . .'" Ibid. (quoting State v. Bender, 80 N.J. 84, 93 (1979)). "The question is not whether we agree or disagree with the prosecutor's decision,

but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Nwobu, 139 N.J. at 254.

## III.

We next apply these general principles to the present matter. Defendant claims that the prosecutor's analysis of factors seven, ten, and fourteen each was improper because it stated: "New Jersey's firearms statutes are designed to reduce the overall level of violence by ensuring that an extremely limited number of individuals have firearms in public places. Your client's conduct in this case is in direct contravention to this goal . . . ." Defendant asserts that this analysis was improper considering the United States Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). Defendant suggests that in view of Bruen, reducing the aggregate number of guns possessed by ordinary law-abiding citizens in public by requiring a showing of need beyond that of ordinary self-defense is not a legitimate basis for denying PTI.

Defendant's reliance on Bruen is misplaced as he misconstrues that opinion and its significant, but limited, impact on New Jersey's gun laws. In Bruen, the United States Supreme Court addressed whether New York's firearms permitting scheme, which required applicants to show a "special need" for concealed carry, violated the Second Amendment. Bruen, 597 U.S. at 8-11. The

A-1277-23

Court struck down New York's special need requirement. Id. at 71. The Court also explicitly noted that New Jersey's "justifiable need" requirement, then codified at N.J.S.A. 2C:58-4(d),[3] was analogous to New York's unconstitutional standard. Id. at 15 n.2.

After Bruen was decided, the New Jersey Attorney General issued guidance on this subject. See Off. of the Att'y Gen., Law Enf't Directive No. 2022-07, Directive Clarifying Requirements for Carrying of Firearms in Public (June 24, 2022). That directive acknowledges that Bruen "prevents us from continuing to require a demonstration of justifiable need in order to carry a firearm, but it does not prevent us from enforcing the other requirements in our law." Id. at 1. Although Bruen precipitated a significant change to the criteria used to determine whether to issue a firearm carry permit in this State, it did not eliminate the need to obtain a permit before carrying a loaded handgun in public. Bruen took aim at laws that it deemed unconstitutional, not public policies meant to advance public safety by limiting access to firearms by those who are deemed to be qualified and obtain the proper license. The record is clear, defendant did not have a permit to carry at the time of the present offense.

---

[3] N.J.S.A. 2C:58-4 has since been amended to delete the justifiable need provision rendered unconstitutional in Bruen.

A-1277-23

Moreover, defendant claims he presented extraordinary and compelling facts that overcame Rule 3:28-1(d)(1)'s presumption against admission for second-degree unlawful possession of a weapon. Defendant's contention that the prosecutor's analysis of the factors was not based on his individual amenability to rehabilitation through PTI is clearly without merit. We emphasize that the prosecutor submitted a detailed and thorough analysis of all applicable aggravating and mitigating factors before concluding that defendant was not a suitable candidate for PTI. The record shows the prosecutor relied on all facts in the record and noted defendant had an unsecured loaded handgun out in the open while he sat within inches of it. The focus on individualized PTI assessments required by Roseman, 221 N.J. at 621–22, does not require prosecutors to put on blinders as to the dangers posed generally by those who unlawfully carry a loaded firearm in public. We see nothing in this exercise of prosecutorial discretion that approaches an egregious injustice or unfairness as to warrant our intervention. See Negran, 178 N.J. at 82.

IV.

Defendant also contends the sentencing court erred in failing to explain its application of aggravating factor nine, N.J.S.A. 2C:44-1a(9), and failing to find certain mitigating factors. Defendant posits that the sentencing court's

11

finding of mitigating factor seven "no history of prior delinquency or criminal activity;" eight "circumstances unlikely to reoccur;" nine "character and attitude of the defendant indicate that the defendant is unlikely to commit another offense;" and ten "defendant is particularly likely to respond affirmatively to probationary treatment," under N.J.S.A. 2C:44-1b(7), (8), (9), and (10) respectively, contradict the sentencing court's finding that aggravating factor nine applied with "great weight." And that the contradictory finding together with the absence of any explanation from the sentencing court requires reversal of defendant's sentence and a remand for resentencing.

Appellate review of sentencing decisions "is relatively narrow and is generally governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). The reviewing court may not substitute its judgment regarding an appropriate sentence for that of the trial court. State v. Case, 220 N.J. 49, 65 (2014); State v. Lawless, 214 N.J. 594, 606 (2013); State v. Roth, 95 N.J. 334, 365 (1984); State v. Cassady, 198 N.J. 165, 180 (2009). The test to be applied is "whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." State v. Ghertler, 114 N.J. 383, 388 (1989). Thus, a sentence should be affirmed unless a reviewing court determines that (1) the sentence violated legislative policies, (2) the aggravating

or mitigating factors were not supported by credible evidence, or (3) the sentence, although imposed in accordance with the sentencing guidelines, is "clearly unreasonable so as to shock the judicial conscience." Roth, 95 N.J. at 364-65, 365-66; see State v. O'Donnell, 117 N.J. 210, 215-16 (1989) (outlining principles of appellate review of sentencing decisions).

Aggravating factor nine invokes "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44–1(a)(9). The sentencing court's determination is a "qualitative assessment" of the risk of recidivism, but "also involve[s] determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history." State v. Thomas, 188 N.J. 137, 153 (2006). "'Deterrence has been repeatedly identified in all facets of the criminal justice system as one of the most important factors in sentencing,'" and "'is the key to the proper understanding of protecting the public.'" State v. Fuentes, 217 N.J. 57, 78–79 (2014) (quoting State v. Megargel, 143 N.J. 484, 501 (1996)). "[D]emands for deterrence are strengthened in direct proportion to the gravity and harmfulness of the offense." Ibid. (quoting State in Interest of C.A.H. and B.A.R., 89 N.J. 326, 337 (1982)).

13

For purposes of N.J.S.A. 2C:44–1(a)(9), deterrence incorporates two "interrelated but distinguishable concepts," the sentence's "general deterrent effect on the public [and] its personal deterrent effect on the defendant." State v. Jarbath, 114 N.J. 394, 405 (1989) (citing C.A.H., at 334-45). In the absence of a finding of a need for specific deterrence, general deterrence "has relatively insignificant penal value." Ibid. (citing State v. Gardner, 113 N.J. 510, 520 (1989)). In weighing the applicability of aggravating factor nine, the sentencing court accordingly focuses on the need to deter the individual defendant "from violating the law." N.J.S.A. 2C:44–1(a)(9).

In this case, the question of specific deterrence is complicated by the trial court's finding of mitigating factor eight, which requires the sentencing court to conclude that the offense at issue was "the result of circumstances unlikely to recur." N.J.S.A. 2C:44–1(b)(8). Here, the sentencing court acknowledged defendant was charged with second-degree unlawful possession of a firearm, and while accepting defense counsel's characterization of the crime as "aberrational," found it was in fact "very serious." The need for specific deterrence is inherent in such a case, as the dangers of an individual possessing a loaded handgun in public are palpable, and, thus, this factor was amply

14

supported by credible evidence in the record. See Blackmon, 202 N.J. at 296-97.

This defendant secured for himself the State's recommendation of a full Graves waiver to probation and avoided the mandatory minimum of three-and-a-half-years in state prison, a feat reserved for only those defendants whose incarceration would be deemed against the interests of justice. See State v. Nance, 228 N.J. 378, 391 (2017); N.J.S.A. 2C:43-6(c); N.J.S.A. 2C:43-6.2. Defendant also faced up to five years of probation, but only received two years. Thus, defendant is the "exceptional case" where although the circumstances are unlikely to recur, N.J.S.A. 2C:44-1b(8), there nonetheless exists a real need for specific deterrence. N.J.S.A. 2C:44-1a(9). See Fuentes, 217 N.J. at 79.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1277-23